**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **JOANNA STEWART, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | |
| **v.** | Case No.: _____ |
| **DOREL JUVENILE GROUP, INC.,** *Defendant.* | CLASS ACTION COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joanna Stewart ("Plaintiff") brings this Class Action Complaint against Defendant, Dorel Juvenile Group, Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      Plaintiff brings this class action lawsuit on behalf of herself, and all others similarly situated who purchased a Safety First Grow and Go Sprint Car Seat (collectively herein "the Products").

2.      Unfortunately, 180,000 Products sold across the country are unfit for their intended purpose because they are dangerously unsafe for infants[1].

---

[1] https://www.wlbt.com/2025/04/24/nearly-180000-safety-1st-car-seats-recalled-choking-hazard/ (last accessed April 28, 2025)

3.      On or about April 24, 2025, the NHTSA (National Highway Traffic Safety Administration) issued a recall on certain car seats manufactured by Safety First, believed subsidiary of Dorel Juvenile Group, Inc., for a choke hazard pertaining to its car seat headrest.

4.      The Products are manufactured, advertised, sold, and distributed by Defendant or its agents, to consumers, including Plaintiff, across the United States.

5.      All of these products were manufactured by Defendant, distributed to other corporations, and then sold to consumers across the United States.

6.      Through marketing and sale, Defendant represented that the Products are safe for children. Indeed, its corporate website linked to an award for this very product- promoting its safety[2].



---

[2] https://www.jpma.org/news/684429/Innovative-New-Baby-Products-Earn-Recognition.htm (last accessed April 28, 2025)

7.    Plaintiff and consumers do not know, and did not have a reason to know, that the Products purchased carried the potential for choking hazards. Consumers expect the products they purchased to be safe, especially products aimed towards children.

8.    Other manufacturers produce and sell safe car seats, which is evidence that the risk inherent with Defendants' Products is demonstrably avoidable.

9.    Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

10.    At the time of their purchases, Defendant did not notify Plaintiff, and similarly situated consumers, of the Product's choking hazard through the product labels, instructions, packaging, advertising, or in any other manner, therefore, acting in violation of state and federal laws.

11.    Plaintiff purchased the Products, while lacking the knowledge that Products could be dangerous if not deadly, thus causing serious harm to those who use such Products.

12.    Because Plaintiff and all consumers purchased the worthless and dangerous Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

13.    As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## **PARTIES**

14.    Plaintiff Joanna Stewart is a resident and citizen of Delmar, Maryland. Delmar is located within Wicomico County, Maryland.

15.    Defendant Dorel Juvenile Group, Inc. is a foreign Corporation that is registered in the State of Indiana with a Principal Place of Business as: 2525 State Street, Columbus, IN 47201.

The Indiana Secretary of State's online business database lists Christine Eineman Christian as its Registered Agent at the same address noted above.

16.     Dorel Group promotes Safety 1st as one of its flagship brands on its website[3].

17.     When following the link to Safety 1st from Dorel's website it is reported that Safety 1st's website is operated by Dorel UK LTD which is registered in the Netherlands but is registered in London[4].

## JURISDICTION AND VENUE

18.     This Court has subject jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more putative Class Member, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states.

19.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

20.     This Court has personal jurisdiction over Defendant Dorel Juvenile Group, Inc. because Defendant is headquartered in Indiana and has substantial contacts with Indiana. Defendant also receives substantial benefits and income from Indiana.

21.     This Court has personal jurisdiction over Defendant Dorel Juvenile Group, Inc., because it has substantial contacts with, and receives substantial benefits and income from every state in the United States (including Indiana and Maryland) as it sells its products online for all American citizens.

---

[3] https://doreljuvenile.com/our-brands (last accessed April 28, 2025)

[4] https://int.safety1st.com/c/international/disclaimer (last accessed April 28, 2025)

22.     Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant Dorel Juvenile Group would be subject to personal jurisdiction in this District if this District were a separate state, given that Dorel Juvenile Group Inc., is headquartered in the Southern District of Indiana.

## **FACTUAL ALLEGATIONS**

23.     This recall involves a car seat sold by Safety 1st called the "Grow and Go" online at the Defendant's website and in major retail outlets and their online platforms



24.     On or about April 18, 2025, the NHTSA issued a recall for the Safety First Go and Grow Sprint Model CC 321 for a choking hazard concerning its head rest[5].

25.     As noted above, the Defendant promotes the safety and reliability of its Products.

26.     Unfortunately, not all of Defendant's products are as safe as advertised.

**Defendants' Grow and Go Sprint Endangered Children**

27.     The Defendant's car seat is susceptible to the head rests not being properly secured, allowing for it to become attached; children to eat the foam product and present a choke hazard to children utilizing the car seat[6].

---

[5] https://www.nhtsa.gov/recalls?nhtsaId=25C006 (last accessed April 28, 2025)

[6] https://www.wbiw.com/2025/04/24/safety-recall-issued-for-certain-safety-1st-grow-go-sprint-car-seats/ (last accessed April 28, 2025)

28.     The detachable head rest was known to the defendant prior to the recall based upon its online product reviews. The Product has a 2.3 Star review.



**A.   The Health and Safety Risks to Children Associated with the Use of the Products Renders Them Worthless**

29.     As a result of the health and safety risks to infants posed by the use of the Go and Grow Car Seat, the Products have been rendered completely worthless or, at the very least, have been substantially diminished in value.

30.     The information described above, including the now-known health and safety risks to infants, have rendered the Products worthless to consumers. If parents of infants choose to discontinue use of the Products, they must pay for another product that can serve the activity car seats' intended purpose.

31.     Consumers have been told by Dorel Juvenile Group that they will mail replacement headrests beginning in June to impacted customers who register the Product with them.  They are not, as of this writing, offering a full refund or a replacement with a comparable product[7].

**B.  Defendants Delayed Their Recall**

32.     Defendant has not disclosed when they first discovered or received reports from users of the Products regarding the choking hazard.

33.     At a minimum, Defendant was aware of the risk associated with the Products since its sales between February 2023 through December 2023.

34.     Yet, Defendant continued to manufacture and sell the Products with such awareness.  During this period, Defendant unreasonably and unjustly profited from the manufacture and sale of the Products and unreasonably put infants at risk of choking.

**C.  Plaintiff**

35.     Plaintiff Joanna Stewart is, and was at all relevant times, an individual residing in Delmar, Maryland.

36.     Plaintiff purchased a new Safety 1st Go and Grow Car Seat Model CC321 manufactured by Dorel Juvenile Group for her child.

37.     This Product is within Defendant's Recall.

38.     At the time of her purchase, Plaintiff was unaware of the risks associated with the Product and the dangers it posed to her child's health and safety.

**TOLLING AND ESTOPPEL**

---

[7] https://safety1st.com/pages/safety-1st-grow-and-go-sprint-model-cc321-voluntary-recall?_pos=1&_sid=a32cc03f0&_ss=r (last accessed April 28, 2025)

**A. Discovery Rule Tolling**

39.     Plaintiff and the members of the Class had no way of knowing about Defendants'

conduct with respect to the choking hazards associated with the use of the Recalled Products.

40.     Neither Plaintiff nor any other members of the Class, through the exercise of

reasonable care, could have discovered the conduct by Defendants alleged herein. Further, Plaintiff

and members of the Class did not discover and did not know facts that would have caused a

reasonable person to suspect that Defendants were engaged in the conduct alleged herein.

41.     For these reasons, all applicable statutes of limitations have been tolled by the

discovery rule with respect to claims asserted by Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a) and 23(b)(3). Plaintiff seeks class certification on behalf of the class defined as

follows (the "Class"):

> All persons in the United States who purchased or used a Safety 1st Go and Grow
> Sprint Car Seat with Model Numbers: CC321GYU, CC321GYUD, CC321GYY,
> CC321GYYD, CC321HAO, CC321HAR, during the applicable statute of
> limitations.

43.     Plaintiff reserves the right to modify or refine the definition of the Class based upon

discovery of new information and in order to accommodate any of the Court's manageability

concerns.

44.     Excluded from the Class are: (a) any Judge or Magistrate Judge presiding over this

action and members of their staff, as well as members of their families; (b) Defendants and

Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries and any entity in which

Defendants or their parents have a controlling interest, as well as Defendants' current or former

employees, agents, officers, and directors; (c) persons who properly execute and file a timely

request for exclusion from the Class; (d) persons whose claims in this mater have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiff and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

45.    **Numerosity (Rule 23(a)(1)).** The Class members are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class, as herein identified and described, is not known, but the Recall Notice indicates that approximately 180,000 individuals have purchased the Recalled Products.

46.    **Commonality and Predominance (Rule 23(a)(2)).** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members including the following:

- Whether Defendants owed a duty of care to Plaintiff and the Class;

- Whether Defendants knew or should have known that the Recalled Products posed health and safety risks to infants;

- Whether Defendants wrongfully represented that the Recalled Products were safe;

- Whether the recalled Products retained any value post-recall;

- Whether Defendants wrongfully represented that the Recalled Products were safe to use;

- Whether Defendants wrongfully failed to disclose that the Recalled Products posed health and safety risks to infants;

- Whether Defendants' representations and omissions in advertising, warranties, packaging, and/or labeling were false, deceptive, and/or misleading;

- Whether those representations and omissions were likely to deceive a reasonable consumer;

- Whether a reasonable consumer would consider the presence, or risk of, health and safety risks of their infant children as a material fact in purchasing one of the Recalled Products;

- Whether Defendants had knowledge that those representations and omissions were false, deceptive, and misleading;

- Whether Defendants breached its express warranties;

- Whether Defendants breached its implied warranties;

- Whether Defendants engaged in false advertising;

- Whether Defendants' conduct was negligent per se;

- Whether Defendants made negligent and/or fraudulent misrepresentation and/or omissions; and

- Whether Plaintiff and the members of the Class are entitled to actual, statutory and punitive damages.

47.     **Typicality (Rule 23(a)(3)).** Plaintiff's claims are typical of the claims of the other members of the proposed Class. Plaintiff and members of the Class suffered injuries as a result of Defendants' wrongful conduct that is uniform across the Class.

48.     **Adequacy (Rule 23(a)(4)).** Plaintiff's interests are aligned with the Class they seek to represent. Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class. Plaintiff has retained competent counsel experience in complex litigation and class actions and the types of claims at issue in this litigation, with the necessary resources committed to protecting the interests of the Class. Plaintiff has no interest that is antagonistic to

those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class.

49.    **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy, and joinder of all members of the Class is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Class treatment will create economies of time, effort and expense and promote uniform decision-making.

50.    **Certification of Specific Issues (Rule 23(c)(4)).** To the extent that any described Class herein does not meet the requirements of Rule 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive the litigation toward resolution.

51.    **Declaratory and Injunctive Relief (Rule 23(b)(2)).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and other members of the Class, thereby making appropriate final injunctive and declaratory relief, as described herein, with respect to the members of the Class as a whole.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**UNJUST ENRICHMENT**

52.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.    Plaintiff brings this claim on behalf of herself individually and on behalf of the Class.

54.     Plaintiff and the Class conferred substantial benefits on Defendants through their purchase of the Recalled Products. Defendants knowingly and willingly accepted and enjoyed these benefits.

55.     Defendant either knew or should have known that the payments rendered by Plaintiff and the Class was given with the expectation that the Recalled Products would have the qualities, characteristics, and suitability for use represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

56.     Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiff and the Class.

57.     Plaintiff and the Class are entitled to recover from Defendant all revenue wrongfully collected and improperly retained by Defendant, plus interest thereon.

58.     Plaintiff and the Class seek actual damages, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT II
## BREACH OF EXPRESS WARRANTY

59.     Plaintiff incorporate the allegations set forth in the previous Paragraphs as though set forth fully herein.

60.     Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide (the "Class").

61.     Plaintiff and each Member of the Class formed a contract with Defendant at the time they purchased the Products.

62.     The terms of the contract included express warranties created by Defendant through

affirmative representations, advertising, packaging, labeling, and marketing of the defective Car seat.

63.     Defendant, through these marketing and advertising efforts, expressly warranted that the Products were safe, effective, and fit for their intended purpose. These warranties became part of the basis of the bargain between Plaintiff, Class Members, and Defendant.

64.     Defendant made these affirmations of quality and safety through product labeling, packaging, and marketing materials. Defendant reinforced and relied upon these warranties by advertising, displaying, and selling the Products to consumers, thereby making its own express representations of the Products' safety and fitness.

65.     Plaintiff and the Class Members fulfilled all conditions precedent to Defendant's liability under this contract, including purchasing the Products in reliance on Defendant's representations.

66.     Defendant breached its express warranties because the Products were defective, the foam headrest is prone to detach and pose an enormous choking hazard. The Products failed to conform to the express affirmations and promises made by the Defendant.

67.     Plaintiff and Class Members would not have purchased the Products had they known the true nature of the risks, including the potential for chocking hazard.

68.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiffs and Class Members suffered and continue to suffer financial damages, injury, and economic losses. They are entitled to compensatory damages, attorneys fees, interest, and any other relief deemed appropriate by the Court.


**COUNT III**
**BREACH OF IMPLIED WARRANTY**

69.    Plaintiff incorporates the allegations set forth in the Paragraphs as though set forth fully herein.

70.    Plaintiff brings this claim against Defendants on behalf of himself and the other Members of the Nationwide Class (the "Class").

71.    Defendant is a merchant engaged in the business of manufacturing, distributing, warranting, and/or selling the Products.

72.    The Products are goods under the relevant laws, and at all times relevant, Defendant knew or had reason to know of the specific use for which these Products were purchased.

73.    Defendant entered into agreements with retailers to distribute and sell the Products to consumers, including Plaintiff and Class Members, for personal and household use.

74.    The implied warranty of merchantability, which applies to all sales of goods, means that Defendant warranted that the Products were fit for their ordinary purpose-- namely, to safely provide a car seat without posing unreasonable risks of harm.

75.    However, Defendant breached the implied warranty of merchantability because the Products were defective, not fit for their intended use, and pose an enormous choking hazard. As a result, they were unfit for their ordinary purpose of keeping children safe in a vehicle.

76.    This implied warranty applies to all purchasers of the Products, including Plaintiff and Class Members, because they reasonably relied on Defendant's status as merchants and sellers of safe, functional goods.

77.    Privity of contract is not required, as Plaintiff and Class Members are the intended beneficiaries of Defendant's implied warranties. Defendant's warranties were created for the benefit of consumers, including Plaintiff and Class Members.

78.    Defendant was on notice of the defects through consumer complaints, reports of

risk of choking, and the recall of the Products, yet failed to address these defects before selling the Products to consumers.

79.    Had Plaintiff, Class Members, and other consumers known that the Products posed a choking hazard, they would not have purchased them or would have paid significantly less.

80.    As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and Class Members suffered and continue to suffer financial harm, injury, and other damages. Plaintiff and the Classes seek all available damages, including compensatory damages, attorneys' fees, interest, and any other relief deemed appropriate by the Court.

**<u>COUNT IV</u>**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

81.    Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

82.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Classes").

83.    Defendant is a merchant engaged in the sale of goods, including the defective Car Seats, to Plaintiffs and the Class.

84.    There was a sale of goods from Defendant to Plaintiff and Class Members, thereby establishing a commercial relationship between Defendant and consumers.

85.    As the developer, manufacturer, marketer, distributor, and seller of the defective Products, Defendant impliedly warranted that the Products were merchantable and fit for their intended use.

86.    However, contrary to these representations, the Products were defective and unfit for their ordinary use, as they posed a significant risk of choking, which was not disclosed to

consumers at the time of sale.

87.    Defendant breached the implied warranty of merchantability by selling products that were inherently defective and not suitable for their ordinary and intended purpose.

88.    Defendant was on notice of this breach, was aware of adverse health and safety risks caused by the choking  hazard yet failed to take corrective action before selling the Products.

89.    Plaintiff and Class Members did not receive the goods as bargained for, as the Products were not merchantable, did not conform to industry standards, and failed to meet the quality and safety expectations of similar goods.

90.    Plaintiff and Class Members are intended beneficiaries of the implied warranties, as they reasonably relied on Defendant's expertise and reputation as merchants when purchasing the Products.

91.    Plaintiff and Class Members did not alter the Products, and they used them in the ordinary and intended manner.

92.    The Products were defective at the time they left the exclusive control of Defendant, meaning that Defendant bears responsibility for the defect.

93.    The Products were defectively designed and/or manufactured, making them unfit for their intended purpose and rendering them non-merchantable under applicable laws.

94.    Plaintiff and Class Members purchased the Products without knowing of the latent defect, which was undiscoverable at the time of purchase but existed when the Products left Defendant's control.

95.    As a direct and proximate result of the defective Products, Plaintiff and Class Members suffered damages, including, but not limited to, the cost of purchasing the defective Product, loss of use, and other related damages.

96.     Defendant attempted to limit or disclaim their implied warranties, but any such disclaimers are unenforceable and void, as a product that poses safety risks cannot be lawfully sold under the implied warranty of merchantability.

97.     Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT V
## FRAUDULENT CONCEALMENT

98.     Plaintiff incorporates the allegations set forth in the previous Paragraphs as though set forth fully herein.

99.     Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

100.     Defendant had a duty to disclose material facts to Plaintiffs and Class Members given their relationship as contracting parties and intended users of the Products.

101.     Defendant had superior knowledge about the defective nature of the product at issue, particularly the risk of the foam headrest detaching from the car seat and choking children, which made them unfit for ordinary use.

102.     During this time, Plaintiff and Class Members were using the Products without knowing of these choking risks, reasonably believing that the Products were safe for use.

103.     Defendant knew or should have known about the defect but failed to warn consumers, retailers, or regulators, and continued to sell the Product despite the defect, and either knew or should have known about the risk, particularly if the recall had already been issued.

104.     Defendant failed to disclose these material facts with the intent to induce consumers

into purchasing the Products, despite the latent defect. This failure constitutes fraudulent concealment as Defendant intentionally withheld critical safety information that, if disclosed, would have affected consumers purchasing decisions.

105.    Plaintiff and Class Members reasonably relied on Defendant's failure to disclose, believing that the Products were safe when, in fact, they were not.

106.    Had Plaintiff and Class Members known the true risks, they would not have purchased the Products or would have paid significantly less.

107.    As a direct and proximate result of Defendant's fraudulent concealment, Plaintiff and Class Members suffered financial losses, including the cost of purchasing defective Products, the risk of harm, and the devaluation of their purchases.

108.    Because Defendant acted with willful and malicious intent, punitive damages are warranted to deter future misconduct and punish Defendants for knowingly concealing critical safety information from consumers.

<u>COUNT VI</u>
**STRICT LIABILITY – FAILURE TO WARN**

109.    Plaintiff incorporates the allegations set forth in the Paragraphs as though set forth fully herein.

110.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

111.    Defendant had a duty to warn Plaintiff and Class Members about the Defect and the true risks associated with the Products.

112.    As the manufacturer, Defendant was in a superior position to know about the defective Products and their dangerous propensity to have their head rests detach and present a choking hazard to children. However, Defendant failed to warn consumers, retailers, and

regulatory agencies about the risks when it had the opportunity to do so.

113.   Defendant failed to provide adequate warnings regarding the risks of the Products before or at the time of sale, particularly if it continued selling the Products despite knowledge of the recall or other safety concerns.

114.   Defendants had access to critical safety information regarding the choking hazards associated with the Products, yet failed to warn Plaintiff and Class Members, leaving them unaware of the dangers.

115.   Despite knowing the risks, Defendant did not strengthen their warnings or provide adequate safety disclosures before selling the Products. Instead, Defendant actively concealed or ignored the need for stronger warnings, prioritizing sales over consumer safety.

116.   Plaintiff and Class Members would not have purchased, chosen, or paid for the Products had they known of the risk of the headrest easily detaching and for children to have the ability to eat its foam construction making them vulnerable to a choking hazard. Because Defendant failed to provide proper warnings, consumers were deprived of their right to make an informed purchasing decision.

117.   The Defect proximately caused Plaintiff's and Class Members' damages, as they purchased and used a Product that posed an unreasonable risk of harm without their knowledge.

118.   Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VII
## STRICT LIABILITY – DESIGN DEFECT

119.   Plaintiff incorporates the allegations set forth in the Paragraphs as though set forth fully herein.

120.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

121.    The design of the recalled headrests was defective and unreasonably dangerous, making the Products unsafe for consumer use.

122.    The risk of detaching and being consumed by children while Plaintiff and Class Members used the Products posed a serious risk of injury.

123.    The design defect rendered the Products not reasonably fit, suitable, or safe for their intended purpose, violating consumer safety expectations.

124.    The risk of children choking outweighed the benefits of the Products, making them unreasonably dangerous to consumers.

125.    There were alternatives, safer car seat designs available, including other car seats that did not pose a similar choking risk, meaning Defendant had the ability to manufacture a safer product, but failed to do so.

126.    Defendant could have implemented safer design modifications that would have reduced or eliminated the choking risk, such as non-detachable headrests or detachable headrests with parental safety control that needed to be utilized for removal.

127.    Because the Products were unreasonably unsafe and did not perform as an ordinary consumer would expect, they should not have been sold to consumers.

128.    Defendant is strictly liable for selling the defective Product, as strict liability applies to all entities in the chain of distribution.

129.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## COUNT VIII
## NEGLIGENT FAILURE TO WARN

130.    Plaintiff incorporates the allegations set forth in the Paragraphs as though set forth fully herein.

131.    Plaintiff bring this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

132.    Defendant owed Plaintiff and Class Members a duty of care to warn of any risks associated with the Products.

133.    Defendant knew or should have known that the defective product posed a significant choking risk to children but failed to warn Plaintiff and Class Members.

134.    Defendant had a duty to warn consumers if it had knowledge or reason to know about the defect including through prior consumer complaints, product recalls, or other safety notices, but failed to provide adequate warnings before or at the time of sale.

135.    Plaintiff and Class Members had no way of knowing about the Product's latent defect, as an ordinary consumer would not expect the Product to have its headrest easily detach during normal use.

136.    Defendant's breach of its duty to warn caused Plaintiffs and Class Members to suffer economic damages and physical injuries, including the risk of burns, exposure to toxic substances, and property damage.

137.    Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorneys' fees available under law.

## COUNT IX
## NEGLIGENT DESIGN DEFECT

138.    Plaintiff incorporates the allegations set forth in the Paragraphs as though set forth fully herein.

139.    Plaintiff brings this claim against Defendant on behalf of himself and the other Members of the Nationwide Class (the "Class").

140.    Defendant owed Plaintiff and Class Members a duty of care to design, manufacture, and sell products that were safe for their intended use.

141.    The design of the recalled Safety First Go and Grow Car Seat was defective and unreasonably dangerous, causing exposure to a choking hazard and, with that, the risk of severe injury.

142.    The design of the Products rendered them unfit, unsuitable, and unsafe for their intended purpose, as the risk of children choking while eating the detached headrest far outweighed any benefits of the Product.

143.    There were alternative, safer car seat designs available that did not pose similar choking risks, meaning Defendant could have implemented a safer design but failed to do so.

144.    Defendant had access to industry knowledge, safety reports, and consumer complaints that should have alerted them to the defective nature of the Products.

145.    Defendant was negligent in selling the defective Products, as they either knew or should have known that the design was unreasonably dangerous, particularly if the recall had been issued or customer complaints had been received before further sales.

146.    The negligent design of the Product was the proximate cause of Plaintiff's and Class Members' damages, as it posed an inherent and foreseeable risk of harm that Defendant failed to address.

147.    Plaintiff and Class Members have suffered damages in an amount to be determined

at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, and all costs and attorneys' fees available under law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as to each and every count, including:

A.     An order certifying this action and the Class requested herein as a class action, designating Plaintiff as representative of the Class and appointing Plaintiff's counsel as counsel to the Class;

B.     An order declaring that liable to Plaintiff and the Class, as described herein, for damages arising therefrom;

C.     A judgment awarding Plaintiff and members of the class all appropriate damages in an amount to be determined at trial;

D.     A judgment awarding Plaintiff and the Class prejudgment and post-judgment interest, as permitted by law;

E.     A judgment awarding Plaintiff and the Class costs and fees, including attorney's fees, as permitted by law; and

F.     Grant such other legal, equitable, or further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.


Dated: May 5, 2025.                                    Respectfully Submitted,

**COX LAW OFFICE**
/s/ Jacob R.Cox
Jacob R. Cox, Attorney No. 26321-49
1606 N. Delaware Street
Indianapolis, IN 46202
Tel: (317) 884-8550
Fax: (317) 660-2453
Email: jcox@coxlaw.com

-AND-

Paul J. Doolittle, Esq. (*Pro Hac Vice*
Forthcoming)
**POULIN | WILLEY | ANASTOPOULO,
LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiff*